UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PERFORMANCE CONTRACTING, INC.,

    Plaintiff,

                                       Case Number 12-10165

v.                                  Honorable Thomas L. Ludington

DYNASTEEL CORP., et al.,

    Defendants.

    _____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO CHANGE VENUE AND CANCELING HEARING**

DynaSteel Corp. ("DynaSteel") was hired as a subcontractor to fabricate and construct ductwork for the Karn Project, a complex in Hampton township. DynaSteel was to perform the work at its Mississippi facility and transport the ductwork to the project site for incorporation. DynaSteel requested that Plaintiff Performance Contracting, Inc. ("PCI") furnish and install insulating material and PCI agreed to provide the materials and services for approximately $1.85 million dollars. The ductwork was completed and incorporated into the Karn Project. DynaSteel also contracted with PCI for two other projects—the Brandon Shores and Sammis Projects—for which it allegedly owed PCI $3.33 million dollars as of June 18, 2009. DynaSteel began making payments and entered into a Payment Agreement, which provided that the payments would be applied to the oldest outstanding invoices first. DynaSteel made payments through June 2010.

PCI filed a complaint with in the Bay County Circuit Court against DynaSteel, James Russell, and Ronald Russell (collectively, "Defendants"), asserting claims for violation of Michigan's Builders Trust Fund Act, fraud and fraud in the inducement, conspiracy to defraud and violate the Trust Fund Act, and breach of contract. Because the payments that were made applied

to the Brandon Shores and Sammis Projects, PCI alleges that DynaSteel still owes the full amount for the Karn Project. PCI also alleges that DynaSteel, through the individual defendants James Russell and Ronald Russell, submitted false and fraudulent lien waiver and work statements to improperly obtain payments that were owed to its subcontractors, including PCI. Defendants removed the case to this Court on January 13, 2012.

Defendants now seek transfer of the case to the Western District of Tennessee pursuant to 28 U.S.C. § 1404(a) because all of the defendants reside in Tennessee, Plaintiff has a branch office in Tennessee but not in Michigan, the contract at issue was formed in Tennessee and thus governed by Tennessee law, and the acts giving rise to this lawsuit occurred in Tennessee and Mississippi. Because Defendants' have not met their burden of demonstrating, by a preponderance of the evidence, that fairness and practicality strongly favor transfer to the Western District of Tennessee, their motion to transfer venue will be denied.

## I.   Facts

DynaSteel had a long time business relationship with PCI. The parties business relationship was centered in Memphis, Tennessee, where PCI maintained a branch office. DynaSteel and PCI performed approximately ten projects together over the last seven years. PCI's primary business in Memphis is industrial insulation services.

This action arises out of the contract made between DynaSteel and PCI in Memphis regarding the insulation of ductwork fabricated by DynaSteel. Representatives of DynaSteel negotiated the contract terms with Bo Loeffel, PCI's branch manager in Memphis. The contract was evidenced by a purchase order issued by DynaSteel to PCI. The purchase order contains a forum selection clause, providing that the contract and its performance are governed by the laws of

Tennessee, and that the seller, PCI, consents to jurisdiction within the state and federal courts situated in Shelby County, Tennessee.

DynaSteel had contracted with Consumers Energy Company ("Consumers"), a Michigan-based utility, to provide ductwork for use in connection with improvements undertaken by the utility at its Karn, Michigan electric power plant. The scope of the Karn Project involved the installation of pulse jet fabric filters at the Karn generating plant, which required, among other things, installing insulated ductwork between the existing power equipment, the new pulse jet fabric filters and the smoke stacks. Dynasteel performed engineering and steel preparation on the ductwork in Memphis. James Russell and Ronald Russell are, or were at all times relevant, officers of DynaSteel. The materials were shipped to Natchez, Mississippi, where DynaSteel employees fabricated the ductwork. Pursuant to Purchase Order No. 08018051 dated February 28, 2009, PCI agreed to furnish and install insulating material for the ductwork on the Karn Project for the price of $1,842,890.00.PCI, per its subcontract with DynaSteel. The ductwork was inspected in Natchez by Consumers' representatives. After the product was approved by Consumers for shipment, an independent contractor took the completed product via river barge to Karn, Michigan. A contractor hired by Consumers installed the ductwork at the Karn power plant. DynaSteel submitted payment applications to Consumers Energy in Michigan for payment of the ductwork supplied and incorporated into the Project, which included PCI's work.

PCI insulated the ductwork in Natchez in the summer and fall of 2009. PCI first billed DynaSteel on July 30, 2009. PCI subsequently issued two other invoices on August 28, 2009 and September 25, 2009. All the invoices were issued from PCI's Memphis office.  As of September 30, 2009, DynaSteel owed PCI the total principal amount of $4,191,747 (the "Total Indebtedness") for

work on the Karn Project and two other projects, known as the Sammis and Brandon Shores Projects located in Ohio and Maryland, respectively. The Total Indebtedness included the entire contract amount of $1,842,890.00 for the Karn Project.

Prior to billing, PCI was aware that DynaSteel had serious financial problems. The parties conducted negotiations regarding payment of indebtedness owed to PCI by DynaSteel in connection with three different projects. PCI and DynaSteel reached an agreement on November 17, 2009, regarding the payment of indebtedness owed in connection with the various projects (the "Payment Agreement"). Almost all of the negotiations surrounding the Payment Agreement were handled by senior officers and employees of PCI located in Kansas, including Dan Hefferon (CEO) and Walt Eskeberg (Vice-President of Operations). All of PCI's relevant documents surrounding the Payment Agreement are at its corporate offices in Lenexa, Kansas.

Under the Payment Agreement, DynaSteel agreed to make certain lump sum payments to PCI, as well as monthly installment payments to PCI per the schedule attached to the Payment Agreement. The Payment Agreement further provides that payments shall be applied to the oldest outstanding invoices first and that if DynaSteel fails to make any payment as agreed, the balance of all amounts owed shall immediately become due and owing and PCI can take necessary legal action to collect said amounts. The Payment Agreement also included the execution of a guarantee by Jim Russell in the amount of $800,000. DynaSteel was unable to satisfy all of its obligations under the Payment Agreement. Jim Russell paid the $800,000 owed by him pursuant to the terms of the Payment Agreement.

Although DynaSteel made some payments under the Payment Agreement, those amounts, but for $4,276.06, were applied to invoices for the Sammis and Brandon Shores Projects because

those were the oldest outstanding invoices. DynaSteel has not made any payments to PCI since June 2010. Thus, PCI contends that DynaSteel owes the principal amount of $1,838,613.94 to it for the Karn Project, plus interest and attorney fees under the terms of the Payment Agreement.

## II. Standard of Review

Under 28 U.S.C. § 1404(a), the Court may grant a motion to transfer venue "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Courts have broad discretion to grant or deny a motion for transfer of venue under 1404(a). *Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000) (citing *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989)). The moving party bears the burden of demonstrating that, in light of these factors, "fairness and practicality strongly favor the forum to which transfer is sought." *Thomas v. Home Depot U.S.A., Inc.*, 131 F. Supp. 2d 934, 936 (E.D. Mich.2001) (quoting *Rowe v. Chrysler Corp.*, 520 F. Supp. 15, 16 (E.D. Mich. 1981)). The moving party must make this showing by a preponderance of the evidence. *Amphion Inc. v. Buckeye Elec. Co.*, 285 F.Supp.2d. 943, 946-47 (E.D. Mich. 2003) (citing *Thomas*, 131 F. Supp. 2d at 936; *Int'l Union, U.A.W. v. Aluminum Co. of Am.*, 875 F. Supp. 430, 433 (N.D. Ohio 1995)).

When a district court reviews a motion to transfer venue under § 1404(a), the forum selection clause should figure "centrally into a district court's calculus," but the district court should also consider "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of interests of justice." *Moses v. Business Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991).

In deciding a motion to transfer venue, the Court must determine whether the action could have been brought in the proposed transferee district, whether a transfer would promote the interests of justice, and whether a transfer would serve the parties' and witnesses' convenience. *United States v. P.J. Dick, Inc.*, 79 F. Supp. 2d 803, 806 (E.D. Mich. 2000); *Perceptron, Inc. v. Silicon Video, Inc.*, 423 F. Supp. 2d 722, 728-29 (E.D. Mich. 2006). Factors to be considered include: (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Perceptron, Inc.*, 423 F. Supp. 2d at 729.

### III.   Discussion

**A.   Whether the Action Could Have Been Brought in the Proposed Transferee District**

An action founded in diversity jurisdiction may be brought in a judicial district where any defendant resides, if all defendants reside in the same State, or a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(a)(1)-(2). Because all of the defendants reside in Tennessee, and a substantial part of the events giving rise to the plaintiff's claims occurred in Memphis, Tennessee, this matter could have been brought in the Western District of Tennessee.

**B.   Other Relevant Inquiries**

**1.   The Convenience of the Witnesses**

Convenience of the witnesses is one of the most important factors in deciding whether a

motion to transfer venue under 28 U.S.C. § 1404(a) should be granted. *Thomas*, 131 F. Supp. 2d at 937. A party seeking to transfer a case should specify the key witnesses and the nature of their testimony. *New World Systems Corp. v. Jones*, 2009 WL 996954, *6 (E.D. Mich. 2009). "[W]ithout a specific list of witnesses' names and an outline of what material testimony the witnesses would provide, this Court cannot properly assess the convenience of the witnesses." *Id.* at *6. "[I]t is the convenience of non-party witnesses, rather than employee witnesses . . . that is accorded greater weight." *Steelcase, Inc. v. Smart Technologies, Inc.*, 336 F. Supp. 2d 714, 721 (W.D. Mich. 2004) (emphasis added). This conclusion makes sense because "each party is obligated to procure the attendance of its own employees for trial." *American Env. Services, Inc. v. Metalworking Lubricants Co.*, 634 F. Supp. 2d 568,576 (W.D. Penn. 2009).

Defendants contend that most, if not all, of their witnesses are residents of Tennessee and would have to travel to Michigan to testify. Defendants identify three former DynaSteel employees that they anticipate calling as well as four non-party fact witnesses who also reside in Tennessee. Because all of Defendants' witnesses would have to travel a significant distance to testify, they argue that his factor weighs in favor of transfer. *See, e.g.*, *Lauer v. Days Inn-Ocala, Fla.*, No. 08-11405, 2008 WL 4378287, at *1 (E.D. Mich. Sept. 23, 2008) (declining to set aside motion to transfer where convenience of the witnesses favored transfer).

In response, PCI argues that merely shifting the burden from one party to another in terms of a transfer is impermissible. *Grand Kensington, LLC v. Burger King Corp.*, 81 F. Supp. 2d 834, 837 (E.D. Mich. 2000). The primary and most relevant witnesses for PCI—its employees that negotiated the Payment Agreement, Consumers employees involved with the Karn Project, and witnesses from the financial institutions involved in the payments to DynaSteel—are not located in

Tennessee. Moreover, PCI emphasizes that nearly half of the witnesses Defendants intend to call to testify are employees of the parties and are thus irrelevant to the instant factor. Defendants also have not specified their key witnesses and the nature of their testimony. In contrast, PCI notes that it intends to call non-party witnesses from Consumers, located in Michigan, and from its financial institutions. The witnesses from its project engineer are located in Pennsylvania. Even if the majority of Plaintiff's non-party witnesses are located outside of this district, "inconvenience to the defendant is not established by citing the number of witnesses for the plaintiff who live outside the district where the suit was begun. . . ." *Sun Oil Co. v. Lederle*, 199 F.2d 423, 424 (6th Cir. 1952). PCI contends that the fact that some witnesses are outside of this district is insufficient to support a transfer of venue.

Because Defendants have not provided the Court with a list of names and the testimonies of the witnesses, this factor does not provide a basis for transferring the case to the Western District of Tennessee. Additionally, the fact that Plaintiff intends to call a number of witnesses that are located outside this district also does not provide a basis for transfer because of Defendants' alleged inconvenience. Defendants thus have not adequately demonstrated that the convenience of the witnesses weighs in favor of transfer.

**2.    The Locations of the Documents and the Relative Ease of the Access to Sources of Proof**

Next, Defendants note that all the relevant documentary evidence is located in Memphis, Tennessee, with the most relevant documentary evidence consisting of the accounting records of DynaSteel and this factor should also weigh in favor of transfer. *See, e.g.*, *Perception, Inc. v. Silicon Video, Inc.*, 423 F. Supp. 2d 722, 729 (E.D. Mich. 2006).

While this case will include documentary evidence, "the location of documentary evidence

is a minor consideration." *United States v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 890 (N.D. Ohio 1999). The "technological advances of recent years have significantly reduced the weight of this factor [i.e., the location of documents] in the balance of convenience analysis." American Env. Services, 634 F. Supp. 2d at 576; see *also Grand Kensington, LLC v. Burger King Corp.*, 81 F. Supp. 2d 834, 837 (E.D. Mich. 2000) ("Given the conveniences of today's world, the Court finds that the bringing of various documents to this district is not burdensome, let alone something that would tip the scales in favor of transferring the matter . . . ."). As a result, "this factor should thus be limited to the extent that the files could not be produced in the alternative forum." *American Env. Services*, 634 F. Supp. 2d at 576 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)).

Defendants, however, do not contend that a burden exists related to production of documentary evidence in Michigan and have not explained the nature of the documentary evidence or its volume. Additionally, PCI notes that its relevant documents are in Kansas and the non-party documents are in Michigan. Defendants thus have not met their burden of demonstrating that this factor weighs in favor of transfer to Tennessee.

### 3. The Convenience of the Parties

None of the parties to the case are citizens of Michigan. Defendants are citizens Tennessee and PCI has a branch office in Memphis, Tennessee, and Defendants argue that the convenience of the parties thus favors transfer as well. *See, e.g.*, *Bernard v. Schech*, No. 00-75376, 2001 WL 560983, at *3 (E.D. Mich. April 27, 2001). Because PCI chose this Court as the proper venue, however, Defendants cannot argue that PCI's inconvenience favors transfer. *American Can Co. v. Crown, Cork & Seal Co., Inc.*, 433 F.Supp. 333, 338 (E.D. Wisc. 1977). Without more, PCI argues

that the fact that Defendants would have to travel to this Court for trial does not establish that Tennessee is a more convenient forum for the parties.

Although Defendants will undoubtedly be burdened by holding the present proceedings in the Eastern District of Michigan, if granted, the result of Defendants' motion to transfer venue would be to shift this burden onto Plaintiff. Merely shifting the burden from one party to another is impermissible. *Grand Kensington, LLC v. Burger King Corp.*, 81 F. Supp. 2d 834, 837 (E.D. Mich. 2000); *see also Evans Tempcon, Inc. v. Index Industries, Inc.*, 778 F. Supp. 371, 377 (W.D. Mich.1990).

### 4.     The Locus of Operative Facts

An action should be tried in the location that is the "center of gravity" of the dispute. *See, e.g.*, *Sloan v. Borgwarner, Inc.*, No. 09-10918, 2009 WL 1689846, at *7 (E. D. Mich. June 17, 2009). As explained in the facts of the case, the parties' business relationship was created and centered in Tennessee. DynaSteel contracted with the plaintiff's branch office located in Memphis, Tennessee, and all PCI invoices were issued from its Memphis office. None of the work performed by PCI occurred in Michigan and Defendants' alleged acts or omissions giving rise to the claims set forth in the complaint occurred in Tennessee.

In response, PCI emphasizes that the underlying construction project is in Michigan, DynaSteel contracted directly with Consumers, which is located in Michigan, DynaSteel sent its payment applications and related documents to Consumers in Michigan, and Consumers presumably paid DynaSteel with funds from a Michigan-based financial institution.  Additionally, PCI performed no work in Tennessee that is at issue, but performed its work on the Karn Project at its facility in Natchez, Mississippi. The critical correspondence regarding the Payment Agreement

originated and was drafted in Kansas. Accordingly, PCI argues that Defendants have not met their burden of demonstrating that this factor weighs in favor of transfer to Tennessee.

The locus of operative facts is arguably not located in Michigan; however, it is not clear that the locus of operative facts is located in Tennessee, either. As noted, a significant portion of the facts are centered in Kansas and Mississippi. Because neither Tennessee nor Michigan are definitely the center of gravity of this dispute, this fact neither weighs in favor of, nor against, transfer.

### 5. The Availability of Process to Compel Attendance of Witnesses

Defendants also note that this Court lacks the subpoena power to compel any potential unwilling witness to attend trial because all of Defendants' potential witnesses live more than 100 miles from the courthouse in Bay City. Conversely, a Tennessee court would have the ability to compel most, if not all, of Defendants' potential witnesses to appear and give testimony. *See* Fed. R. Civ. P. 45(e) (allowing a court to hold in contempt any person who refuses to obey a subpoena unless "the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii)"); Fed R. Civ. P. 45(c)(3)(A)(ii) (requiring a court to quash or modify a subpoena that requires a nonparty to travel more than 100 miles from where the nonparty resides, works, or regularly transacts business "except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held"); Fed. R. Civ. P. 45(c)(3)(B)(iii) (allowing a court to quash or modify a subpoena if it requires "a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial").

Under the plain language of Rule 45(c)(3)(A), the only relevant witnesses under this factor are non-party witnesses. Because Defendants have not identified any non-party witnesses that may

be uncooperative, PCI asserts that they have not met the burden of demonstrating that any of their non-party witnsses would be unavailable for trial in this district. *American Env. Services*, 634 F. Supp. 2d at 576; *see also Thomas*, 131 F. Supp. 2d at 938 (E.D. Mich. 2001) (holding that defendant did not show this factor weighed in favor of its motion when defendant named a witness, but made no showing that the witness was necessary or unwilling to voluntarily testify). Additionally, PCI's non-party witnsses are located in Michigan and Pennsylvania and could not be compelled to attend a trial in Tennessee, and this Court could do so at least with respect to Consumers. As such, this factor weighs against transfer to Tennessee. Defendants note that the central issue in the case is enforcement of the Payment Agreement, and contend that witnesses from Consumers and PCI's project engineer would not be relevant.

Because Defendants have not identified any witness who resides outside the 100-mile subpoena limit of this Court and who is unwilling to incur the burden of traveling to Michigan to testify, they have not met their burden of demonstrating that this factor weighs in favor of transferring the case to the Western District of Tennessee.

### 6. The Relative Means of the Parties

Defendants contend that they collectively consist of an insolvent corporation and two individuals who have already committed substantial resources attempting to save DynaSteel from closure and thus do not have the same means to defend a lawsuit in Michigan as PCI would have to pursue a lawsuit in Tennessee.

Although the relative financial strength of the parties is a legitimate consideration, PCI argues that the Court should not place any weight on this factor because Defendants have not substantiated their financial condition with any exhibits. *See Thomas*, 131 F. Supp. 2d at 938 (E.D.

Mich. 2001) (holding when a party fails to substantiate his financial condition with exhibits, the court is in no position to conclude that traveling to another state for trial would pose a hardship); *see also William Beaumont Hospital v. Medtronic, Inc*., 2010 WL 2534207, *9 (E.D. Mich. June 18, 2010) (rejecting "bald assertions" that had "virtually no factual basis" to support an argument). Because Defendants have made only unsupported, conclusory statements that they cannot afford to defend this action in Michigan, PCI submits that this factor does not weigh in favor of transfer.

As noted previously, the result of granting Defendants' motion to transfer venue would be to shift this burden onto Plaintiff. Merely shifting the burden from one party to another is impermissible. *Grand Kensington, LLC v. Burger King Corp*., 81 F. Supp. 2d 834, 837 (E.D. Mich. 2000); *see also Evans Tempcon, Inc. v. Index Industries, Inc*., 778 F. Supp. 371, 377 (W.D. Mich.1990). Additionally, Defendants have not provided any supporting documents to substantiate their financial condition. Defendants thus have not provided evidence to strongly favor transfer to Tennessee.

### 7. The Forum's Familiarity with the Governing Law

Because the contract between the parties is governed by Tennessee law, Defendants argue that a district court in Tennessee is more familiar with the application of Tennessee law than a district court in Michigan and this factor thus weighs in favor of transfer.

PCI disagrees that Tennessee law governs the case. PCI's claim for violation of the Michigan Builders Trust Fund Act is governed by Michigan law and Michigan law governs Plaintiffs other claims for fraud and civil conspiracy, given the claims' relationship to the alleged violations of the Builders Trust Fund Act. Additionally, although the Purchase Order contains a choice of law provision favoring Tennessee law, that fact is irrelevant because PCI's claims are for

breach of the Payment Agreement, which is a separate agreement that does not contain any provision addressing a conflict. The absence of a merger clause in the Payment Agreement is inapposite because the Payment Agreement did not amend any prior agreements but stands as an independent agreement that covers Defendants' lack of payment on multiple projects. Defendants note, however, that the Payment Agreement was negotiated in Kansas and Tennessee, and executed in Tennessee. Under Michigan's conflict of laws rules, the Payment Agreement is to be construed under Tennessee law or, possibly, under Kansas law. *See Uhl v. Komatsu Forklift Co., Ltd.*, 512 F.3d 294, 302 (6th Cir. 2008).

Tennessee or Kansas law is likely the proper law applied in construing the Payment Agreement, but as PCI notes, its claim for violation of the Michigan Builders Trust Fund Act is governed by Michigan law. As is the case with the locus of operative facts factor, this factor likewise neither weighs in favor nor against transfer.

### 8. The Weight Accorded to the Plaintiff's Choice of Forum

When analyzing a transfer of venue issue under 28 U.S.C. § 1404(a), there is a strong presumption in favor of a plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum. *See Nicol v. Koscinski*, 188 F.2d 537, 537 (6th Cir. 1951) ("Unless the balance is strongly in favor of the defendant, a plaintiffs choice of forum should rarely be disturbed."); *IFL Group, Inc. v. World Wide Flight Service, Inc*., 306 F. Supp. 2d 709 (E.D. Mich. 2004) (stating that the moving party must prove that the relevant factors "strongly favor the forum to which transfer is sought.").

Although "a plaintiff s choice of forum should be given weight when deciding whether to grant a motion to change venue, this factor is not dispositive." *Lewis v. ACB Bus. Servs., Inc*., 135

F.3d 389, 413 (6th Cir. 1998). Indeed, a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum. *Piper Aircraft v. Reyno*, 454 U.S. 235, 256 (1981). Because Michigan is not PCI's home forum, Defendants contend that this factor, too, weighs in favor of transfer.

The fact that this district is not Plaintiff's home forum, standing alone, does not weigh in favor of transfer. Defendants have not offered any other justification for transfer other than the fact that Plaintiff has chosen a foreign forum. Because the other factors do not overcome the presumption in favor of Plaintiff's chosen forum by demonstrating that the private and public interests clearly point towards the Western District of Tennessee as the appropriate forum, this factor likewise does not weigh in favor of transfer.

### 9. Trial Efficiency and Interests of Justice

Finally, Defendants note that this case does not involve a Michigan resident, and Michigan courts thus have no interest in a dispute between a Kansas-based corporation and Tennessee residents regarding a contract made in Tennessee and performed by PCI in Mississippi. The parties' business relationship was centered in Memphis, Tennessee. DynaSteel and PCI had their respective places of business within a few miles of each other in Memphis, Tennessee. Courts in Tennessee have a much stronger interest in the resolution of this case. *See General Motors Co. v. Dinatale*, 705 F. Supp. 2d 740, 752 (E.D. Mich. 2010) (identifying "the public's interest in having local controversies adjudicated locally" as a relevant inquiry in the § 1404(a) analysis).

Because this case arises out of a construction project in Michigan for a large Michigan-based utility company, involves materials manufactured and/or produced by the parties that were shipped to Michigan and installed into the project, involves the failure to pay money originating in Michigan

and involves a claim under a Michigan statute, PCI argues that the interests of justice favor keeping the case in this Court.

Although the parties' relationship centered on acts that occurred in Tennessee, Mississippi and Kansas, the ultimate construction project that the parties' contracted to perform work on was located in Michigan and the complaint alleges violations of a Michigan statute. Moreover, the fact that the parties are not Michigan residents does not change the Court's interest in adjudicating controversies resulting from actions that are directed towards the state. Defendants have not met their burden of demonstrating that the interests of justice weigh in favor of transfer to Tennessee.

Furthermore, Defendants find the statistics released in March 2011 for the case load in the Eastern District of Michigan relevant. In March 2011, the Eastern District of Michigan had close to three-and-one-half times the number of pending civil cases as did the Western District of Tennessee. *See* United States Courts Statistics, www.uscourts.gov/Statistics.aspx. Therefore, Defendants believe that the congestion of the relative forums further favors transfer. *General Motors Co.*, 705 F. Supp. 2d at 752 (identifying the "relative congestion in the courts of the two forums" as a relevant inquiry in the § 1404(a) analysis). PCI notes that, although the Eastern District of Michigan has a heavier case load, it also has twenty judges as opposed to the five judges located in the Western District of Tennessee. Correspondingly, the case-to-judge ratio for the Eastern District of Michigan is 261 cases per judge, while the ratio for the Western District of Tennessee is 273 cases per judge.

While the Eastern District of Michigan, and the Northern Division in particular, are busy, the Civil Justice Reform Act reports nevertheless reflects prompt and timely attention to assigned cases. United States Courts, *Civil Justice Reform Act Report Summary*, 31 (September 30, 2011),

http://www.uscourts.gov/uscourts/statistics/cjra/2011-09/CJRASep2011.pdf (demonstrating one civil case pending for more than three years, and no motions, bench trials, bankruptcy appeals or social security appeals pending for more than six months for Ludington, J.). The congestion of the relative forums thus does not favor transfer.

### 10.    Forum Selection Clause

Federal common law rules govern the enforceability of a forum selection clause where jurisdiction is based on diversity and a party moves to transfer the action under § 1404(a). *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27-28 (1988). While federal common law does not mandate an automatic transfer, it does require that the district courts consider the clause as one factor of the § 1404( a) calculus. *Kerobo v. Southwestern Clean Fuels*, Corp., 285 F.3d 531, 537-38 (6th Cir. 2002). The parties' original contract contains a forum selection clause that provides that "[a]ny action by any party to enforce rights hereunder shall be brought exclusively in the state and/or federal courts situated in Shelby County, Tennessee." Purchase Order par. 14. The United States District Court for the Western Division of the Western District of Tennessee, to which defendants now seek transfer, encompasses Shelby County. 28 U.S.C. § 123.  Because there is no merger clause in the parties' Payment Agreement, Defendants assert that it cannot supersede the Purchase Order, which is the original agreement between the parties.

In response, PCI notes that the Purchase Order is not the contract at issue; the Payment Agreement is the relevant agreement and does not contain a forum selection clause.  Thus, the forum selection clause in the Purchase Order is not a factor that warrants consideration.

Because it is unclear, based on the parties' arguments, whether the Purchase Order or the Payment Agreement is the operative document, Defendants have not demonstrated that venue should

be transferred based on the forum selection clause in the Purchase Order. Indeed, in their reply, Defendants appear to accept Plaintiff's theory of the case as enforcing the Payment Agreement which does not contain a forum selection clause.

### IV.   Conclusion

Defendants' have not met their burden of demonstrating, by a preponderance of the evidence, that fairness and practicality strongly favor transfer to the Western District of Tennessee.

Accordingly, it is **ORDERED** that Defendants' motion to change venue (ECF No. 5) is **DENIED**.

It is further **ORDERED** that the hearing scheduled for May 2, 2012 is **CANCELED** because oral argument will not aid in the disposition of the motion. E.D. Mich. L.R. 7.1(f)(2).

                              s/Thomas L. Ludington  
                              THOMAS L. LUDINGTON  
                              United States District Judge

Dated: May 9, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 9, 2012.

                          s/Tracy A. Jacobs  
                          TRACY A. JACOBS